IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **HEATHER ANDERSON**, | Case No. 3:15-cv-01389-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KAISER FOUNDATION HEALTH PLAN OF THE NORTHWEST**, | |
| Defendant. | |

Justin R. Steffen, STEFFEN LEGAL SERVICES, LLC, 2027 SE Jefferson Street, Suite 205, Milwaukie, OR 97222. Of Attorneys for Plaintiff.

Laura E. Rosenbaum and Melissa J. Healy, STOEL RIVES LLP, 900 SW Fifth Avenue, Suite 2600, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff, Heather Anderson ("Anderson"), is employed by Defendant, Kaiser Foundation Health Plan of the Northwest ("Kaiser"). In this lawsuit, Anderson alleges that Kaiser discriminated against her by failing to reasonably accommodate her disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112.[1] Kaiser moves for summary judgment. For the reasons that follow, Kaiser's motion is granted.

---

[1] Anderson initially brought two additional claims for relief, retaliation under the ADA, 42 U.S.C. § 12203, and common-law intentional infliction of emotional distress. Anderson has since withdrawn those claims.

PAGE 1 – OPINION AND ORDER

**STANDARDS**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

**BACKGROUND[2]**

Anderson is a member of the Service Employees International Union, Local 49 ("SEIU") and a current employee of Kaiser. Anderson works as a gardener for Kaiser, a position she has held since November 2005. From 2005 until late 2011, Anderson worked at Kaiser's Sunnyside Medical Center in Clackamas, Oregon. In late 2011, Kaiser held an "open job bid" for all of its gardener positions. Employees were allowed to bid into the reporting location and schedule of their choice. The job bid was conducted on the basis of seniority, consistent with the terms of the collective bargaining agreement ("CBA") between Kaiser and SEIU. As a result of the open bid,

---

[2] Anderson does not dispute any of the facts stated in Kaiser's memorandum in support of its motion for summary judgment.

Anderson was moved to Kaiser's Overlook location in Portland, Oregon. Anderson began working at the Overlook location in November 2011.

At the Overlook location, Anderson worked with Anton Puls, a fellow gardener. Anderson became concerned about Puls's "erratic" behavior and "anger issues." Anderson verbally reported to her supervisor, Karen Moore, that working with Puls made Anderson uncomfortable. On July 3, 2014, Anderson complained to Moore in writing about an incident with Puls. Anderson reported that Puls behaved aggressively and that Anderson felt threatened. Anderson requested that she be moved to a different work location. Kaiser and SEIU promptly investigated Anderson's complaint. Because there were no witnesses and Puls and Anderson provided differing accounts of what had happened, Kaiser informed Anderson that it was unable to substantiate her allegations.

During the investigation, however, Anderson was permitted to "check in" for work with security, instead of at the Overlook gardening facility to minimize her interactions with Puls. After the investigation had been completed, Kaiser offered the following options to Anderson to minimize her contact with Puls: (1) Anderson could work with someone other than Puls for three days each week and there would be a supervisor onsite during the fourth day of each week when Anderson would have to work with Puls; (2) Anderson could check in 30 minutes late each day to avoid direct contact with Puls; (3) Kaiser would facilitate a meeting with Puls and Anderson to develop a joint action plan to improve their working relationship; (4) Anderson could exchange work assignment locations with another employee provided that the other employee was willing to take Anderson's shift; (5) Anderson could transfer to an "on-call" position; and (6) Anderson could use the services of Kaiser's Employee Assistance Program ("EAP") to help her reduce

PAGE 3 – OPINION AND ORDER

and manage stress. Kaiser indicated, however, that it could not simply unilaterally relocate Anderson to another work site because there were no open positions.

Anderson declined all of these options that Kaiser offered, and she took, with Kaiser's approval, a personal leave of absence beginning August, 2014. During her leave, Anderson filed a grievance with her union, requesting that she be moved to a different work location. Kaiser met with Anderson on August 12, 2014, and explained to her that it was not possible to move her to another location under the terms of the CBA, and again offered a number of accommodations to limit Anderson's interactions with Puls, including "[a]llowing her to work with another gardener present on Tuesdays, Wednesdays, and Thursdays and to have a Senior Gardener reporting from her assignment location during her shifts on Fridays." Dkt. 13 ¶ 9. Kaiser denied the grievance, and SEIU chose not to take the grievance to arbitration.

On August 15, 2014, Kaiser sent Anderson a letter stating that her personal leave would not be further extended. In response, Anderson requested, and was allowed to take leave under the federal Family and Medical Leave Act ("FMLA"). In late September 2014, Anderson's attorney sent Kaiser a letter stating that Anderson may be protected under the ADA. Kaiser promptly contacted Anderson to begin the interactive ADA accommodation process. The parties met on October 16, 2014, and Kaiser provided Anderson with documents for her medical provider to complete.

Anderson's medical provider, Karin Jacobson, M.D., completed the form. Dr. Jacobson identified the following as the essential job function that Anderson could not perform without an accommodation: "Unable to handle difficult interpersonal interactions or conflict." Dkt. 15-1 at 69; Dkt. 16-1 at 3 (same). As Dr. Jacobson next explained, "When [Anderson is] confronted with extreme anger, she has difficulty breathing, communicating or thinking clearly." *Id.*

PAGE 4 – OPINION AND ORDER

Dr. Jacobson then recommended the following reasonable accommodation that would enable Anderson to perform her essential job functions:

> My patient has a serious medical condition (anxiety) and with increased stress or inability to manage conflict in the work environment. I recommend the employer + employee engage in a dialogue to identify ways of reducing stressors in the work environment and conflict with co-workers.

*Id*. In addition, Anderson's treating counselor, Nannette Zirnstein, LPC, recommended that Anderson remain off of work until November 30, 2014, at which time Ms. Zirnstein would reevaluate Anderson's condition. Anderson remained on FMLA leave until it was exhausted on November 1, 2014. Kaiser approved Anderson's continued medical leave after her FMLA leave was exhausted.

The parties met on December 5, 2014, to discuss possible accommodations under the ADA. Kaiser explained that it had already begun implementing new communication policies and protocols in the Landscape Services department to reduce friction in the workplace and improve relationships among employees. Kaiser offered a number of other accommodations to Anderson, including the one accommodation specifically recommended by Dr. Jacobson. Anderson, however, continued to request the accommodation of being relocated to another worksite, and Kaiser continued to respond that no open positions available.

The parties then scheduled a follow-up meeting for December 15th, which was rescheduled to December 31st at Anderson's request. Anderson again requested as an accommodation that she be relocated, and Kaiser again explained that there were no open positions available and that even after a position became available, it would have to be filled in compliance with the terms of the CBA, including its seniority provisions. The parties met for a final time on January 16, 2015, and Anderson again declined the accommodations proposed by Kaiser.

PAGE 5 – OPINION AND ORDER

Ms. Zirnstein continued to recommend medical leave until January 29, 2015, when she wrote to Kaiser that Anderson was ready to return to work. On February 2, 2015, Anderson notified Kaiser that she wanted to return to work, and Anderson returned to her former position within a week. Kaiser has continued to implement its new communication policies, and Anderson continues to work at Kaiser's Overlook location. The parties agree that after Anderson first raised her concerns about working with Puls in early July 2014, Kaiser has ensured that Anderson has never had to work alone with Puls. Since Anderson's return to work to work in early February 2015, more than 14 months ago Kaiser has continued accommodate Anderson by ensuring that she does not have to work alone with Puls. Kaiser has done so by allowing her to work with another gardener present on Tuesdays, Wednesdays, and Thursdays and to have a Senior Gardener, or on-call gardener, reporting from Anderson's assignment location during her shifts on Fridays. Dkt. 13 ¶ 25. This is the same accommodation first offered in August 2014. Kaiser has represented to the Court that it intends to leave in place the current accommodation. There have been no adverse employment actions taken by Kaiser against Anderson.

## DISCUSSION

Anderson alleges employment discrimination in violation of the ADA. The ADA prohibits discrimination on the basis of disability in hiring, advancement, compensation, or other terms and conditions of employment. 42 U.S.C. § 12112(a) (prohibiting discrimination on the "basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment"). "Discrimination" is defined to include the failure to make "reasonable accommodations to the known . . . limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the

accommodation would impose an undue hardship on the operation of the business of such covered entity." § 12112(b)(5)(A).

To establish a *prima facie* case of employment discrimination under § 12112, Anderson must show: (1) she is "disabled" as defined by the ADA; (2) she is a "qualified individual" as defined by the ADA; and (3) she was discriminated against because of her disability. *See Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013). Kaiser argues that summary judgment should be granted in its favor because Anderson is neither disabled under the ADA nor a qualified individual under the ADA and that Kaiser already has made numerous attempts reasonably to accommodate Anderson. The Court finds that there is no genuine dispute that requires resolution at trial and that Kaiser has fulfilled its obligations under the ADA by making numerous attempts reasonably to accommodate Anderson and that Anderson is solely responsible for the termination of the interactive process. Accordingly, summary judgment in favor of Kaiser is appropriate and the Court need not decide whether Anderson is either disabled or qualified under the ADA. *See* ADA Amendments Act of 2008, PL 110–325, § 5, 122 Stat 3553 ("[I]t is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations . . . .").

After an employer becomes aware of an employee's disability, the employer and employee must engage in good faith in an interactive process to determine a reasonable accommodation. *U.S. Equal Emp't Opportunity Comm'n v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1110 (9th Cir. 2010). This process "requires: (1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective."

*Id.* (quotation marks and citation omitted). "[E]mployers, who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible." *Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1116 (9th Cir. 2000) (en banc), *vacated on other grounds*, 535 U.S. 391 (2002). Good faith participation in the interactive process is a continuing obligation, and the failure of an attempted accommodation does not excuse an employer from further participation in the interactive process. *Humphrey v. Mem'l Hosp. Ass'n*, 239 F.3d 1128 (9th Cir. 2001). "An employer is not obligated to provide an employee the accommodation he [or she] requests or prefers, the employer need only provide some reasonable accommodation." *UPS Supply Chain.* 620 F.3d at 1110-11. However, "'[l]iability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown' in the interactive process." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (quoting *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir. 1996)).

Anderson does not suggest that Kaiser failed to comply with either step one or step two of the interactive process. Anderson asserts only that Kaiser failed, at step three, to offer accommodations that were reasonable and effective. Anderson relies on *Reynolds v. Brock*, 815 F.2d 571 (9th Cir. 1987), to argue that the reasonableness of an employer's offered accommodations is a question of fact that can never be resolved on summary judgment. In *Reynolds*, a former government employee sued her former agency, the Department of Labor, for wrongful discharge under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 et seq.[3] The Ninth Circuit's holding in *Reynolds*, however, is not as broad as suggested by

---

[3] The Ninth Circuit's analysis of the Rehabilitation Act is relevant to the present case. As amended, the Rehabilitation Act incorporates the sections of the ADA at issue in the present

PAGE 8 – OPINION AND ORDER

Anderson. In *Reynolds*, the Ninth Circuit held that "whether an employer has attempted in *good faith* to initiate reasonable accommodation" is a "genuine issue of material fact" when a prima facie case for discrimination under the Rehabilitation Act has been established. *Id.* at 575 (emphasis added). In the present case, Anderson does not contend that Kaiser either failed to initiate or participate in the interactive process in good faith; Anderson asserts only that Kaiser failed to offer a reasonable accommodation, namely the sole accommodation that she demanded. *Reynolds*, therefore, is distinguishable from this case.

In addition, the Ninth Circuit has held that ADA accommodations can be found reasonable as a matter of law. *See Sharpe v. Am. Tel. & Tel. Co.*, 66 F.3d 1045, 1051 (9th Cir. 1995) ("Accordingly, there remains no genuine factual dispute concerning whether [defendant] fulfilled its duty to reasonably accommodate [plaintiff's] disability.").[4] Further, in *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422 (4th Cir. 2015), the Fourth Circuit explained that an accommodation "consistent with the recommendations of the doctor[] who had examined [the plaintiff] . . . supports the basic reasonableness of the [defendant's accommodation]." *Id.* at 432.

Here, Kaiser, like the defendant in *Adams*, offered Anderson the precise accommodation recommended by Anderson's own doctor: that the employer and employee engage in a dialogue to identify ways of reducing stressors in the work environment and conflict with co-workers. The Court is not implying that the accommodation expressly recommended by Anderson's doctor is the only reasonable accommodation that is possible, but rather, by offering the exact

---

case. *See* 42 U.S.C. § 794(d) (incorporating among other sections 42 U.S.C. §§ 12102, 12111-12).

[4] *Sharpe* involved a claim under Washington's antidiscrimination statute. 66 F.3d at 1045. Washington courts, however, "look to federal decisions to determine the appropriate construction" of "Washington statutes or regulations that have the same purpose as their federal counterparts." *Clark v. Shoreline Sch. Dist. No. 412, King Cty.*, 720 P.2d 793, 803 (Wash. 1986).

PAGE 9 – OPINION AND ORDER

accommodation suggested by Anderson's doctor, Kaiser has offered *a* reasonable accommodation. By offering a reasonable accommodation, Kaiser has fulfilled its initial obligation under step three of the interactive process, which requires Kaiser to offer "an accommodation that is reasonable . . . ." *UPS Supply Chain Solutions,* 620 F.3d at 1110.

However, "[t]he duty to accommodate is a continuing duty that is not exhausted by one effort. [T]he employer's obligation to engage in the interactive process ... continues when the employee asks for a different accommodation . . . ." *Id.* at 1111 (second and third alteration in original) (citation and quotation marks omitted). Here, Anderson requested a different accommodation, and Kaiser offered a number of other potential accommodations including, among other things: (1) letting Anderson check in 30 minutes late for her shift to minimize interactions with Puls; (2) ensuring that Anderson would not be working alone with Puls; and (3) allowing Anderson to exchange shifts with another employee provided that Anderson could find another employee willing to assume Anderson's reporting location, hours, and days. Dkt. 15-1 at 19-21. Anderson rejected all of Kaiser's suggested accommodations. Dkt. 13 ¶¶ 20-21, 24.

Despite knowing that there were no open positions, Anderson continued to insist that the only accommodation that she would accept would be a location transfer away from Puls. *Id.* at ¶¶ 18-19. There is nothing in the factual record that shows Anderson ever requesting or suggesting any accommodation other than to be transferred to a location away from Puls.[5] The

---

[5] In her response to Kaiser's motion for summary judgment, Anderson asserts that she "has merely requested that she be allowed to check in and clock out of another location, which other employees have been allowed to do. . . . Her position would still be the same except for when and where she checked into work." Dkt. 16 at 8. Kaiser, however, offered Anderson the opportunity to check in at security or to check in 30 minutes late for her shift so that she could avoid Puls during check in. Anderson rejected those offers and repeatedly insisted that she be moved to a work location away from Puls. As Anderson explained in her response, "[t]his

record is replete with examples of Anderson stating that the only accommodation that she would accept would be for her to be moved to a location away from Puls. *See, e.g.*, Dkts. 15-1 at 15-18, 19, 24-25, 29, 31, 42-45; 21 at 2-4, 11. Anderson's request to be transferred to a location away from Puls, however, was not a reasonable request because it would compel Kaiser to violate the terms of its CBA with SEIU. *Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 680 (9th Cir. 2001), *as amended* (Mar. 27, 2001) (finding that "an accommodation that requires an employer to violate a CBA's seniority system is . . . unreasonable *per se*"); Dkt. 20 at 6-7 (setting out the seniority system in the Kaiser-SEIU CBA). This is especially true here, there were other less drastic accommodations available, including the sole accommodation suggested by Anderson's doctor, which Kaiser provided.

The Court concludes that, viewing the evidence in the light most favorable to Anderson and drawing all reasonable inferences in her favor, there is no genuine dispute that requires a trial to resolve. Kaiser is not responsible for the breakdown in the interactive process that occurred after Anderson rejected each offered accommodation and insisted at each step only on a single unreasonable accommodation. *Zivkovic*, 302 F.3d at 1089; *Willis*, 244 F.3d at, 680. Kaiser, thus, has satisfied its obligations under the ADA to engage in the interactive process and offer reasonable accommodations. The Court finds summary judgment in favor of Kaiser is warranted because Kaiser has satisfied its obligations under the ADA.

## CONCLUSION

Defendant's motion for summary judgment (Dkt. 12) is GRANTED.

---

accommodation does nothing to address the issue that working with Mr. Puls during the day aggravates Plaintiff's anxiety." Dkt. 16 at 6. This confirms that the only accommodation that Anderson would accept involves a transfer to a location or shift where Puls would not be present. As Anderson conceded, however, "Plaintiff agrees that Defendant is not obligated to offer the specific accommodation suggested by Plaintiff." *Id.* at 5.

PAGE 11 – OPINION AND ORDER

**IT IS SO ORDERED**.

DATED this 27th day of April, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge